**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

HOMI AMIRMOKRI,                              *

        Plaintiff,

v.                                           *     Civil Action No. AW-05-1717

SPENCER ABRAHAM,                             *
SECRETARY,
DEPARTMENT OF ENERGY                         *

        Defendant.                           *

\* \* \* \* \*

## MEMORANDUM OPINION

This action involves a Title VII suit brought by Homi Amirmokri ("Amirmokri" or "Plaintiff") against Spencer Abraham in his capacity as Secretary of the United States Department of Energy (the "DOE" or "Defendant"). In his Complaint, Plaintiff alleges retaliation for engaging in a protected activity—namely, the filing and subsequent litigation of an EEO complaint—and discrimination on the basis of national origin—specifically, Iranian—in violation of the Title VII of the Civil Rights Act of 1964. Currently pending before the Court are Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [9], and Plaintiff's Motion for Leave to File a Surreply [19]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

At all times relevant to this action, Plaintiff, an Iranian immigrant, was a GS-15 level nuclear

1

engineer employed by the DOE.[1] As part of his responsibilities, Plaintiff acted as Program Manager for the Oak Ridge National Laboratory ("ORNL"), a nuclear facility located in Oak Ridge, Tennessee. In this capacity, Plaintiff was responsible for, *inter alia*, reviewing safety measures at ORNL. On May 5, 2003, Plaintiff, who is based in the Washington, DC area, visited ORNL in connection with the planned transport of a "Q-Ball cask," a 25-ton metal container used to move hazardous nuclear materials. Plaintiff was scheduled to view the cask and receive a tour of the facilities that housed it.

While visiting ORNL, Plaintiff raised concerns over the adequacy of a Transportation Safety Document ("TSD") that had been prepared by Cathy Simmons ("Simmons"), a member of the ORNL research and development staff, outlining the potential hazards of transporting the Q-Ball cask. Plaintiff was alarmed because the TSD was based on a dated safety analysis report and did not take into consideration more recent—and more stringent—DOE safety regulations. Plaintiff voiced his concerns to Ray Bond ("Bond"), the facility manager at the ORNL radiochemical and engineering development center, who offered to arrange an impromptu meeting between Plaintiff and Simmons. Although the parties' accounts of this meeting differ, it is essentially undisputed that the encounter did not go well. Simmons, who had never previously prepared a formal TSD, was unable to satisfactorily answer Plaintiff's questions, and the meeting was eventually cut short by Bond, who suggested that Simmons be given an opportunity to prepare detailed answers to Plaintiff's queries. While Plaintiff contends that he was neither rude nor discourteous towards Simmons, Simmons was evidently shaken by this exchange, later complaining to her superiors that Plaintiff addressed her in a "hostile, condescending manner" that made her "feel about two inches

---

[1] As far as this Court is aware, Plaintiff remains in that position today.

tall." (Pl.'s Opp., Ex. 10 at 15.)

Several days after the May 5th meeting, Plaintiff's supervisor at DOE, Owen Lowe ("Lowe"), was contacted by George Malosh, a manager at ORNL, and advised of Plaintiff's allegedly unprofessional conduct towards Simmons. Lowe was also informed of an incident that had occurred prior to the meeting, in which Plaintiff allegedly refused, when seeking entry into a limited access area at the facility, to identify his employer. Plaintiff was granted entry when Michael Woods, an ORNL representative who had been accompanying Plaintiff on his tour, stated that Plaintiff worked for DOE. After being notified of these incidents, Lowe spoke to Plaintiff and advised him to be "on his best behavior" during the remainder of his visit to ORNL.

On May 15, 2003, Plaintiff met with Larry Boyd, a GS-14 general engineer at ORNL, in Boyd's office at the facility. The subject of the meeting was an email that Boyd had sent to Plaintiff approximately two months earlier, in which Boyd suggested that performing an independent transportation safety review of the Q-Ball cask would be a waste of taxpayer money. Boyd has testified that upon entering his office and shutting the door, Plaintiff immediately asked him whether he (Boyd) knew that he could be sued for libel, and then repeated this question several times during the course of the meeting. Boyd was taken aback by this question, which he viewed as a thinly-veiled threat designed to suppress a differing technical opinion. Following this exchange with Plaintiff, Boyd contacted Lowe to complain.

Lowe, who was particularly troubled that this incident occurred after he had specifically admonished Plaintiff to be on his best behavior, decided to conduct his own investigation into Plaintiff's conduct at ORNL. After receiving approval from his supervisor, William Magwood, Lowe traveled to ORNL and interviewed Simmons, Bond, and several other individuals. Lowe did

3

not, however, interview Woods, who had accompanied Plaintiff on part of his tour and later testified that he had not observed Plaintiff's behavior to be rude or unprofessional in any way. Lowe also spoke to Plaintiff regarding his conduct during the trip. According to Lowe, Plaintiff essentially denied that anything improper had happened, a response which Lowe did not find credible. Lowe then discussed the situation with the human resources department, which advised him that a suspension of Plaintiff would, under the circumstances, be warranted. Lowe decided that a milder sanction would be sufficient, and issued Plaintiff a memorandum of reassignment and a letter of reprimand. The reassignment notice, issued on June 16, 2003, provided that Plaintiff would no longer have oversight duties at ORNL and that he was not to have any direct contact with anyone at the facility. The notice also instructed Plaintiff to focus his time and energy on completing a Documented Safety Analysis ("DSA") review. The letter of reprimand, issued on June 27, 2003, discussed Plaintiff's "inappropriate behavior" at ORNL, specifically referencing his meeting with Cathy Simmons, his meeting with Larry Boyd, and his conduct when seeking entry into the limited access area. The letter also provided that it would remain in Plaintiff's personnel folder for a period of one year and would then be removed.

      After Plaintiff's reassignment, his primary task was to complete a DSA of the ORNL High Frequency Isotope Reactor ("HFIR") safety documentation. Plaintiff contends that in the course of completing the DSA, Lowe gave him "unattainable deadlines," forcing Plaintiff to work a substantial amount of overtime. Lowe asserts that although he expected Plaintiff to adhere to a certain schedule, Plaintiff was granted additional time to complete his assignment when it became clear that the original deadline would not be met. Plaintiff also alleges that after he completed the DSA, in September 2004, he was deprived of meaningful work until April 2005. Plaintiff asserts that

4

approximately 70% of his time was spent reading technical journals, in an effort to maintain his overall level of expertise, while the other 30% was dedicated to small, discrete tasks such as reviewing the DOE website. Defendant maintains that Plaintiff was given ample work and that his post-reassignment responsibilities were not significantly diminished, save for his loss of the ORNL Program Manager assignment.

In the fall of 2004, Plaintiff filed a formal complaint with the DOE, which was advanced the administrative hearing stage. Plaintiff claimed that his reassignment and letter of reprimand constituted discrimination on the basis of national origin and retaliation for the filing and litigation of an earlier EEO complaint.[2] On February 16, 2005, the administrative judge issued a bench ruling denying Plaintiff's claims, which was followed by a written order on March 11, 2005. On June 23, 2005, Plaintiff filed suit in this Court. Count I of the Complaint asserts a claim of retaliation, while Count II alleges discrimination on the basis of national origin. On November 30, 2005, Defendant filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment. That motion is ripe for disposition, and the Court now issues this opinion.

## II.  **SUMMARY JUDGMENT STANDARD**

When matters outside the pleadings are presented to the court, a Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56,

---

[2]In 2000, Plaintiff filed an EEO complaint against the DOE, asserting discriminatory failure to promote and other claims. In the fall of 2002, Plaintiff initiated a civil action on his EEO complaint in U.S. District Court for the District of Columbia. That case was subsequently transferred to District of Maryland and assigned to the undersigned judge. *Amirmokri v. Abraham,* Case No. AW-02-3446. On May 28, 2004, following a three-day jury trial, this Court entered judgment against Plaintiff. Plaintiff appealed to the Fourth Circuit Court of Appeals. Recently, by unpublished opinion, the Fourth Circuit affirmed this Court's judgment. *See Amirmokri v. Abraham*, Case No. 04-1835 (4th Cir. Jan. 14, 2005).

and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F.Supp.2d 499, 502 (D. Md. 2002). Where a party knows that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Id.* Both parties in this case present affidavits and/or other outside pleadings for the Court's consideration. As such, the Court will treat Defendant's motion as a Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.     **PLAINTIFF'S REQUEST FOR DISCOVERY**

Although Plaintiff does not object to the Court treating Defendant's instant motion as a Motion for Summary Judgment, Plaintiff argues that summary judgment is premature and inappropriate at this stage, as Plaintiff requires additional discovery in order to support his claims.

As a general rule, "summary judgment is appropriate only after adequate time for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (citing *Celotex*, 477 U.S. at 322). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal citations omitted).

Under Rule 56(f), "summary judgment [may] be refused where the nonmoving party has not had the opportunity to discovery information that is essential to his opposition." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 250 n.5 (1986)). Rule 56(f) provides:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). The Fourth Circuit has strictly interpreted the requirements of Rule 56(f), emphasizing the need for a Rule 56 affidavit that "particularly specifies legitimate needs for further discovery" and identifies "which aspects of discovery required more time to complete." *Nguyen*, 44 F.3d at 242. Indeed, the Fourth Circuit places "great weight on the Rule 56(f) affidavit" and, to

that end, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans*, 80 F.3d at 961 (quoting *Nguyen*, 44 F.3d at 242 (internal citations omitted)).

In this case, Plaintiff substantively responds to Defendant's Motion for Summary Judgment, and, in addition, attaches to his opposition brief a Rule 56 affidavit by Plaintiff's attorney, asserting the need for additional discovery. Specifically, the Rule 56 affidavit states that Plaintiff needs discovery with respect to similarly situated employees who had been disciplined for misconduct similar to what Plaintiff is alleged to have engaged in. Plaintiff also seeks discovery "to compel the Defendant to provide clear and straight answers as to the reasons Amirmokri's safety concerns were not addressed," to determine "whether the Defendant violated a regulation as earlier testimony revealed," and to obtain additional information for David Knudsen, a "Personnel Management Consultant," regarding the precise nature of Plaintiff's present employment duties and responsibilities. In addition, in Plaintiff's surreply,[3] he alleges that new information has surfaced since the filing of his opposition brief involving a February 14, 2006 incident where similarly situated employees failed to comply with sign-in requirements at a restricted-access area. Plaintiff asserts that these employees were treated differently than he was and seeks further discovery regarding this alleged incident.

Although Plaintiff has asserted the need to conduct additional discovery on a variety of different issues, the Court finds that Plaintiff has failed to demonstrate that the evidence he seeks to discover will materially affect the outcome of this case. A Rule 56(f) motion for additional

---

[3] The Court will grant Plaintiff's unopposed Motion for Leave to File a Surreply.

8

discovery is properly denied when the additional evidence sought to be discovered would not create a genuine issue of material fact sufficient to defeat summary judgment. *Strag v. Board of Trustees, Craven Comm. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995). In its motion for summary judgment, Defendant's central argument—which, for reasons set forth below, this Court finds persuasive—is that Plaintiff was not subjected to an adverse employment action and, as a result, cannot establish a *prima facie* case of either retaliation or discrimination. The law is clear that to prevail on either theory of recovery, Plaintiff must first establish that he suffered some adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required.") (internal citations omitted.) Therefore, because evidence concerning the treatment of similarly situated employees, or the violation of unspecified safety regulations, or the disregard of Plaintiff's safety concerns, has no bearing on the critical question of whether Plaintiff was subjected to an adverse employment action, Plaintiff's request to conduct further discovery with respect to those issues shall be denied.

The Court also denies Plaintiff's request for discovery on the information sought by his expert, David Knudsen, who suggests that a "position audit" of Plaintiff's present employment circumstances—involving interviews with Plaintiff's supervisor and others with first hand-knowledge of Plaintiff's duties and responsibilities—will allow Mr. Knudsen to determine whether Plaintiff's grade level and future employability may have been jeopardized by his reassignment. Speculation about the future adverse consequences of a reassignment is insufficient to create a genuine dispute of material fact and fails to convert the supervisor's conduct into an adverse employment action. *See James*, 368 F.3d at 377.

Finally, the Court notes that Plaintiff's claims were thoroughly investigated at the administrative level, that the central participants in this matter have all been deposed, and that Plaintiff was granted an administrative hearing in which witnesses were produced and subjected to questioning. Yet, Plaintiff provides no reason as to why this investigative material does not provide a sufficient basis for his response to Defendant's Motion for Summary Judgment. In *Ladson v. Thompson*, the plaintiff filed a Title VII claim against her employer, claiming discrimination on the basis of race. 2003 WL 22889793, *1 (D. Md. December 3, 2003). The plaintiff filed a complaint with the EEOC, and after the EEOC denied her claims, the plaintiff brought her case to the federal district courts. *Id.* In response to the defendant's motion for summary judgment, the plaintiff argued in her opposition memorandum[4] that she had not had an adequate opportunity for discovery, and needed additional discovery in order to respond to the defendant's motion. *Id.* at *3. In rejecting plaintiff's argument, the court found that, not only had the plaintiff failed to comply with the requirements of Rule 56(f), but additionally that "this case was investigated at the administrative level and a wealth of information is already available. Therefore, summary judgment for Defendant is proper at this time." *Id.*

Here, although Plaintiff properly filed a Rule 56 affidavit specifying his need for further discovery, Plaintiff has presented no reason as to why the discovery provided at the administrative level is insufficient to allow Plaintiff to respond to Defendant's Motion for Summary Judgment. Furthermore, as discussed above, Plaintiffs requests for discovery concern information that is largely irrelevant and unnecessary to the issues in this case. Consequently, Plaintiff's request for additional

---

[4]The plaintiff in *Ladson* failed to file a Rule 56(f) affidavit, and rather made her arguments concerning additional discovery in the text of her opposition memorandum. *Id.*

discovery is denied.

## IV.   ANALYSIS

### A.   Retaliation

When a plaintiff brings a case of retaliation based on circumstantial evidence, courts must apply the three-part proof scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination, whereupon the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the action. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may then rebut the employer's proffer by proving by a preponderance of the evidence that the employer's legitimate non-discriminatory reason is actually a pretext for discrimination. *Id.* at 804. A plaintiff can prove pretext by showing that the employer's explanation is "unworthy of credence," or by offering other forms of circumstantial evidence sufficiently probative of discrimination. *Id.*

In order to establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) he engaged in protected activity; (2) his employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse employment action. *Carter v. Bell*, 33 F.3d 450, 460 (4th Cir. 1994).

Defendant does not dispute that Plaintiff engaged in protected activity when he filed his earlier EEO complaint and litigated those claims in district court. Rather, Defendant argues that Plaintiff has failed to demonstrate that he was subjected to any adverse employment action. This Court agrees. The crux of Plaintiff's retaliation claim is that Defendant reduced Plaintiff's work responsibilities as punishment for Plaintiff having engaged in protected activity. However, removing Plaintiff from his Program Manager position does not constitute an adverse employment action,

particularly given that Plaintiff's subsequent assignment—leading the HFIR document safety analysis review—entailed substantial responsibility and was commensurate with Plaintiff's GS-15 grade.

Inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation. *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999); *see Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001) (in order to establish *prima facie* case of retaliatory harassment, plaintiff must show defendant's actions "adversely affected the terms, conditions, or benefits of plaintiff's employment"). In *Boone*, the Fourth Circuit Court of Appeals explained that a reassignment does not constitute an adverse employment action where the reassignment causes no reduction in compensation, job title, level of responsibility, or opportunity for promotion. *Boone*, 178 F.3d at 255; *James*, 368 F.3d at 376. Here, Plaintiff's salary, benefits, and title were unchanged. Furthermore, although the reassignment led to the loss of Plaintiff's ORNL Program Manager duty, it did not decrease the quality of Plaintiff's work, as the safety analysis review that Plaintiff was subsequently tasked with was in line with the rest of his duties as a GS-15 nuclear engineer. In his affidavit, Plaintiff underscores just how important, complex, and challenging this project was, noting that it "involved leading a team of 20-25 subject matter experts," and that "due to my previous position and experience, I was not only the best person, but possibly the only person" capable of completing the assignment. (Pl.'s Opp., Ex. 14.) Therefore, the reassignment of Plaintiff's duties did not constitute a significant decrease in his *level* of responsibility, and was not an adverse employment action within the meaning of Title VII.

Plaintiff alleges several other adverse employment action, including the imposition of

12

"unattainable deadlines" for the DSA review; a lack of meaningful work following the completion of the review; and the letter of reprimand he received following his reassignment. The Court is unpersuaded. First, as to Plaintiff's claim that he was subjected to unattainable deadlines in connection with the DSA review, he does not address, acknowledge, or refute Lowe's assertion that Plaintiff's request for additional time to complete the assignment was readily accommodated, nor the fact that the DSA review was, in the end, completed before the September 2004 deadline.

Second, although Plaintiff claims that he was deprived of meaningful work assignments from October 2004 through April 2005, Plaintiff retained his responsibility for developing DOE safety regulations, leading review teams, and staying abreast of developments in the nuclear safety field. Plaintiff has not shown that he was shunted into a "dead-end position," or that his duties were inconsistent with his GS-15 grade level. *Cf. Mackey v. Shalala*, 43 F. Supp. 2d 559, 569 (D. Md. 1999) (reassignment constituted adverse employment action where plaintiff's new supervisor not given any specifics as to what plaintiff's duties and responsibilities would be, but rather told "you've got this employee, find something for her to do"). That Plaintiff may have felt inadequately challenged by his work is not enough to sustain his retaliation claim. *See James*, 368 F.3d at 376 ("The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action.").

Finally, Plaintiff's letter of reprimand, which was removed from his personnel folder after one year, did not, in and of itself, constitute an adverse employment action. *See Jeffers v. Thompson*, 264 F.Supp.2d 314, 330 (D. Md. 2003) (reprimand or poor performance review is not adverse employment action unless it works real harm to employment or is intermediate step to discharge); *Allen v. Rumsfeld,* 273 F. Supp. 2d 695, 706 (D. Md. 2003) (low performance

evaluations, reprimands, and counseling and communication card entries were not adverse employment actions); *Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 528-29 (D. Md. 2002) (verbal warning and counseling letter did not constitute an adverse action); *Nye v. Roberts*, 159 F. Supp. 2d 207, 213-14 (D. Md. 2001) (holding that written reprimand did not constitute an adverse action because "reprimands do not automatically affect the terms and conditions of employment"). Here, Plaintiff has not shown that the letter of reprimand affected the terms and conditions of his employment, his opportunities for advancement, or any other aspect of his career; as such, the June 27, 2003 letter of reprimand does not constitute an adverse employment action.

  Moreover, even if Plaintiff could show an adverse employment action, Plaintiff cannot show that Defendant's legitimate, non-discriminatory reason is pretext. Defendant has presented ample evidence that Plaintiff's reassignment from the ORNL Program Manager position and letter of reprimand were not the result of retaliatory animus, but rather Plaintiff's own actions. It is undisputed that in a span of approximately ten days, Plaintiff's supervisor, Owen Lowe, received two separate telephone calls from individuals complaining about Plaintiff's inappropriate and unprofessional conduct, the second of these calls coming after Plaintiff had specifically been admonished to be on his best behavior. Lowe conducted an investigation of these allegations and determined that: (1) Plaintiff had offended and upset Cathy Simmons when he questioned her about the Q-Ball TSD; (2) Plaintiff had offended and upset Larry Boyd when he threatened him with a libel suit; (3) Plaintiff had behaved unprofessionally when he refused to tell Gary Kelly, the technician controlling entry into the ORNL limited access area, the identity of Plaintiff's employer. Lowe also testified that he lacked direct authority over ORNL personnel, that he relied upon the Program Manager to maintain collegial working relationships with the people at the site, and that

14

Plaintiff's conduct compromised Lowe's ability to carry out his duties.

In response, Plaintiff relies heavily upon the fact that when Lowe conducted his investigation, he never interviewed Mike Woods, who had accompanied Plaintiff into the limited access area and later testified that, in his view, Plaintiff's conduct was neither rude nor unprofessional. Plaintiff argues that this omission constitutes evidence of pretext. The Court notes, however, that Lowe *did* interview Gary Kelly, the ORNL technician, who stated at his deposition that he considered Plaintiff's refusal to identify his employer to be unprofessional, that he discussed the incident with his own supervisor, and that if Woods had not intervened, Kelly would not have let Plaintiff into the facility. Thus, Lowe had ample basis to cite this incident in his investigative report and letter of reprimand. Furthermore, even if Lowe had interviewed Woods, Woods would have been unable to provide any insight into two out of the three incidents that prompted Plaintiff's reassignment—specifically, his meetings with Simmons and Boyd—because Woods was not present for those exchanges. As such, the Court cannot find that Lowe's failure to interview Woods is evidence of pretext.

Plaintiff also argues that Defendant's articulated reasons for his reassignment and reprimand were pretextual because, in his meetings with Simmons and Boyd, Plaintiff was *right*—that is, Plaintiff had legitimate concerns regarding the transport of the Q-Ball cask and was merely doing his job in insisting that DOE safety regulations be followed. That he was punished for his diligence and conscientiousness, Plaintiff contends, demonstrates that Defendant's proffered reasons were merely pretextual. This argument has little merit, because whatever the basis for Plaintiff's disagreement with his colleagues, it was the *manner* in which he voiced his concerns, rather than the *nature* of his objections, that served as the grounds for his reassignment and reprimand. In other

15

words, the soundness of Plaintiff's professional conclusions has little to do with whether those conclusions may have been delivered in a manner that was rude, inappropriate, and deserving of sanction. Furthermore, even if Plaintiff's supervisor overreacted to the multiple complaints regarding his behavior, "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). In sum, Plaintiff has not produced sufficient evidence for a reasonable trier of fact to conclude that Defendant's actions had any relation to Plaintiff's prior EEO complaint, or that Defendant's legitimate, non-discriminatory reasons were merely pretextual. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**B.     Discrimination**

In addition to his claim of retaliation, Plaintiff also asserts that he was the victim of national-origin-based discrimination. In order to establish a *prima facie* case of employment discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he had satisfactory job performance; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

"It is well-established in the Fourth Circuit and elsewhere that the same adverse-action standard applies to both [retaliation and discrimination] claims." *Peary v. Goss*, 365 F. Supp. 2d 713, 723 n.11 (E.D. Va. 2005); *see also James*, 368 F.3d at 375 n.2. Because this Court has already determined that Plaintiff was not subjected to an adverse employment action, his discrimination claim fails as a matter of law.

**V.     CONCLUSION**

For all of the reasons stated above, Defendant's Motion for Summary Judgment [9] is GRANTED.  An Order consistent with this Opinion will follow.


May 9, 2006                                                    /s/
Date                                                    Alexander Williams, Jr.
                                                        United States District Judge